IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KENNETH A. WRIGHT,                 :
                                   :
     Plaintiff,                    :
                                   :
vs.                                :     CIVIL ACTION 12-0091-M
                                   :
MICHAEL J. ASTRUE,                 :
Commissioner of Social Security,   :
                                   :
     Defendant.                    :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),
Plaintiff seeks judicial review of an adverse social security
ruling which denied claims for disability insurance benefits and
Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13).
The parties filed written consent and this action has been
referred to the undersigned Magistrate Judge to conduct all
proceedings and order the entry of judgment in accordance with
28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19).  Oral
argument was waived in this action (Doc. 20).  Upon
consideration of the administrative record and the memoranda of
the parties, it is **ORDERED** that the decision of the Commissioner
be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or

1

substitute its judgment for that of the Secretary of Health and
Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239
(11th Cir. 1983), which must be supported by substantial
evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The
substantial evidence test requires "that the decision under
review be supported by evidence sufficient to justify a
reasoning mind in accepting it; it is more than a scintilla, but
less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918
(11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205
(D. Md. 1982).

At the time of the administrative hearing, Plaintiff was
forty-two years old, had completed a high school education[1] (Tr.
48), and had previous work experience as an owner-operator of a
pressure cleaning business, and as a construction worker and
painting foreman (Tr. 50-51).  In claiming benefits, Wright
alleges disability due to a history of cerebrovascular accident
secondary to atriovenous malformation, headaches, and adjustment
disorder with dysthymia and anxiety (Doc. 13 Fact Sheet).

The Plaintiff filed applications for disability benefits
and SSI on February 27, 2009 (Tr. 126-38; *see* Tr. 21).  Benefits
were denied following a hearing by an Administrative Law Judge

---

[1]**Error! Main Document Only.**Plaintiff testified that he had

(ALJ) who determined that although Wright could not return to his past relevant work, there were specific sedentary jobs which he could perform (Tr. 21-38).  Plaintiff requested review of the hearing decision (Tr. 14-16) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Wright alleges the single claim that the ALJ did not properly consider the opinions and conclusions of his treating physician (Doc. 13). Defendant has responded to—and denies—this claim (Doc. 15).  The relevant medical evidence of record follows.

On February 11, 2009, Plaintiff was admitted to Springhill Medical Center after waking up with heart palpitations and the worst headache he had ever experienced; he did not have any chest pain (Tr. 205; *see generally* Tr. 204-11).  On admission, he was noted in to be in no apparent distress; his heart rate was slow, but regular, with no murmurs, rubs, or gallops.  He had a full range of motion in his extremities with no tenderness; neurologically, he was alert and oriented with no evidence of focal weakness.  During the initial exam, Wright experienced the onset of a bradycardic rhythm, with his heart

---

received a Graduate Equivalency Degree (Tr. 48).

rate dropping from 60 to 34; blood pressure peaked at 204/96. Plaintiff was given medication and admitted to the intensive care unit.  An echocardiogram revealed no high-grade valvular abnormality; systolic function was preserved.  A transcranial Doppler exam and CT angiography showed no significant abnormalities; a brain MRI revealed bleeding, probably from a cryptic arteriovenous malformation (AVM).  A chest x-ray was normal; Plaintiff was found to have hypothyroidism.  Two days after admission, Wright left against medical advice in stable condition; though he was to follow-up with neurosurgery, he left without an appointment or prescriptions (Tr. 204).  Later that same day, Plaintiff returned—and was re-admitted—to the hospital following a bout of tachycardia, hypertension, and a headache (Tr. 112-16).  Wright's heart rate and rhythm were normal; an EKG was normal as well.  A cranial CT scan showed no changes since the test during the first admission.  On discharge, Plaintiff was prescribed Synthroid for his hypothyroidism and Ultram[2] for headaches.

Plaintiff was seen by Dr. Kenneth Sherman at the Mobile County Health Department (hereinafter *MCHD*) for a sharp,

---

[2]**Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

throbbing headache; Wright said the pain was five on a ten-point
scale (Tr. 217-19).  The doctor said that Plaintiff appeared to
be in no acute distress; cardiovascular, musculoskeletal, and
neurological exams were all normal.

Evidence from the USAMC Department of Cardiology on March
30, 2009 show that Wright was complaining of palpitations; his
blood pressure was 114/82 and his heart rate was 72 (Tr. 227-
29).  No cardiovascular abnormalities were noted; Plaintiff's
medication was adjusted (*see* Tr. 28).  Three days later, Wright
was seen by the Department of Neurology for daily headaches; he
also complained of near vision blurriness (Tr. 230-32).  Topamax
was prescribed.

On April 4, Dr. Sherman saw Plaintiff who was getting
refills of his medications; Wright stated that medications were
keeping his headaches at bay (Tr. 233-34).  On April 9, Dr.
Sherman completed a form stating that Plaintiff was unable to
work due to a cerebral AVM; the doctor said that shock risk was
very high (Tr. 280).  Sherman also indicated that the condition
was probably congenital and permanent.

On June 5, Plaintiff was seen at the MCHD to get his
prescriptions refilled; blood pressure was 108/66 and heart rate
was 72 (Tr. 233-34).  Wright was in no apparent distress.  On

July 1, 2009, Wright went to the MCHD and was seen by Dr.
Sherman for a dull, intermittent headache and a panic attack;
blood pressure was 133/85 and heart rate was 68 (Tr. 258-61).
Plaintiff was noted to be in no acute distress.  Xanax[3] was
prescribed.

A physical capacities evaluation (hereinafter *PCE*) was
completed by Dr. Kenneth Sherman on July 22, 2009 which
indicated that Plaintiff could sit for one hour and stand/walk
for one hour at a time and could sit for two and stand/walk for
two hours during an eight-hour day (Tr. 257).  Wright could lift
and carry up to ten pounds one hour a day; though capable of
simple grasping with either hand, he could not engage in fine
manipulation or use arm controls.  Plaintiff could reach for one
hour a day, but could never bend, squat, crawl, or climb.
Wright was moderately restricted in being around moving
machinery and in being exposed to marked changes in temperature
and humidity, dust, fumes, and gases; he was totally restricted
from working at unprotected heights.

On August 27, 2009, Cardiologist Peter Pitonak, at USAMC,
examined Plaintiff who was slightly anxious (Tr. 285-90).  The

---

[3]**Error! Main Document Only.***Xanax* is a class four narcotic used
for the management of anxiety disorders.  *Physician's Desk Reference*
2294 (52nd ed. 1998).

6

doctor noted that Wright had palpitations for which medication was adjusted; hypertension was noted to be well-controlled.  On November 19, Pitonak's examination noted that Plaintiff's palpitations were likely associated with anxiety episodes and had no cardiac etiology; he further noted that his hypertension was not ideally controlled and adjusted his medications (Tr. 282-83).

On December 20, 2009, Wright went to the emergency room at Springhill Medical Center for a headache; he rated the pain as a nine on a scale of ten (Tr. 262-73).  Blood pressure was 155/91 and heart rate was 67; Plaintiff was noted to be in no acute distress and had full range of motion in all extremities.  A brain CT revealed no changes.  Benadryl and Raglan were prescribed and Wright was discharged.

On December 15, 2009, Plaintiff was seen by Dr. Sherman for prescription refills; he was in no acute distress and had no complaints of pain (Tr. 274-78).  Wright returned on March 8, 2010 for more refills; again, he had no complaints.  On July 13, 2010, the doctor completed a Headache Questionnaire in which he stated that Plaintiff experienced headaches three-to-four times a week, each lasting twelve-plus hours, that were not controlled by medications; Sherman indicated that the headaches would cause

symptoms that would severely affect Wright's ability to
concentrate and complete a given task (Tr. 291).  Plaintiff had
been experiencing the headaches since February 2009.

On August 3, 2010, Dr. Sherman saw Wright for prescription
refills, a sore, red right eye, and headache; Plaintiff
described his pain as four on a ten-point scale (Tr. 297-98).
Blood pressure was 115/67.  On December 28, 2010, Wright again
sought refills, voicing complaints of swelling in his ankles and
feet and numbness in his right hand (Tr. 295-96).  On March 1,
2011, Plaintiff sought a cardiac referral (Tr. 293-94).  Two
weeks later, Wright complained of headaches with ringing in his
ears; he was diagnosed to have tinnitus (Tr. 292-93).

In her determination, the ALJ summarized the evidence of
record before determining that there were specific sedentary
jobs that Wright could perform (Tr. 21-37).  In reaching this
decision, the ALJ specifically discounted Dr. Sherman's
conclusions in the PCE, Headache Questionnaire, and the
statement of April 9, 2009 in which he indicated that Plaintiff
was permanently disabled (Tr. 34-35).  Though lengthy, the Court
will set out the ALJ's discussion of the evidence provided by
Dr. Sherman:

> As for the opinion evidence, I give
> little weight to Dr. Sherman's PCE in

8

Exhibit 10F because it is internally
inconsistent.  Dr. Sherman restricted the
claimant to a limited range of sedentary
work based on the claimant possibly having
another stroke.  Dr. Sherman's opinion
expressed is quite conclusory, providing
very little explanation of the evidence
relied on in forming that opinion.  Dr.
Sherman did not indicate why the claimant
has these limitations, and his record does
not contain documentation of his opinion
regarding the claimant's physical
limitations.  In fact, Dr. Sherman's
physical examinations have consistently been
within normal limits (Exhibits 3F, 6F, 11F,
and 13F).  Dr. Sherman did not examine the
claimant on the date the form was completed;
and apparently relied quite heavily on the
subjective report of symptoms and
limitations provided by the claimant.  Dr.
Sherman is not a specialist (*See* Exhibit
14F); therefore, his opinion appears to rest
at least in part on an assessment of
impairments outside his area of expertise.
Additionally, the course of treatment
pursued by Dr. Sherman has not been
consistent with what one would expect if the
claimant were truly disabled, as the doctor
has reported.  Dr. Sherman's opinion is
without substantial support from the other
evidence of record, which obviously renders
it less persuasive.  When the claimant was
seen by a cardiologist, it was determined
that no further cardiac workup was
necessary.  (Exhibit 17F).  The claimant
also saw a neurologist once, who prescribed
Topamax for headaches.  (Exhibit 5F).  I
acknowledge that an AVM is a problem, but it
does not exertionally preclude the claimant
from sedentary work.  While the claimant's
activity level needs to be minimized, all
the other cardiac records and neurology
records show minimal impact compared to Dr.
Sherman's statements in the PCE.  Social

Security Rulings 96-2p and 9 6-5p indicate that controlling weight may not be given to a treating physician's opinion unless it also is "not inconsistent" with the other substantial evidence in the case record. Since Dr. Sherman's opinion is "not inconsistent" with the other substantial evidence in the record, it cannot be given controlling weight.

I also give little weight to Dr. Sherman's opinion in the Headache Questionnaire. Dr. Sherman stated that he does not feel that the medication has controlled the headaches; but he has made no changes in the claimant's medication. Additionally, the claimant has reported that his medication helps his headaches. (Exhibits 2F and 6F). He estimated that the claimant would have headaches that last 12+ hours 3-4 times a week, with symptoms including nausea, vertigo, and palpitation. However, his records do not reflect complaints of nausea, or regular complaints of vertigo or palpitation. The claimant's physical examinations have been consistently normal. Dr. Sherman indicated that he feels that the claimant's headache symptoms would severely affect his ability to concentrate and persist on a given task. However, his treatment notes do not reflect that the claimant ever complained of problems concentrating. (Exhibit 18F).

I do not give significant weight to Dr. Sherman's opinion in Exhibit 15F in which he states that the claimant is permanently disabled. Social Security Rulings 96-2p and 96-5p and 20 C.F.R. §§ 404.1527(e) and 416.927(e) indicate that treating physician opinions on issues reserved to the Commissioner of Social Security are never entitled to controlling weight or special significance. Since Dr. Sherman's opinion in Exhibit 15F concerns an issue (whether the claimant is disabled) reserved to the

> Commissioner, it cannot be given controlling
> weight.  Dr. Sherman did not examine the
> claimant on April 9, 2009; and only
> indicated that the claimant told him in the
> history of present illness that his
> headaches had no relieving factors, no
> aggravating factors, no associated symptoms,
> and interferes with sleep and activity.
> (Exhibit 6F).

(Tr. 34-35).  The Court also notes that the ALJ found that Wright's testimony regarding his limitations and pain were not credible (Tr. 34, 37); Plaintiff has not challenged this finding.

The Court finds that the ALJ's decision is supported by substantial evidence.  Dr. Sherman's conclusions are not supported by his office notes or by any other evidence of record.  Nowhere in this transcript is there any objective evidence of the extreme limitations asserted by Sherman. Wright's claim that the ALJ did not properly consider his treating physician's conclusions is unsupported by the evidence.

Plaintiff has raised a single claim in this action; that claim is without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612

11

F.2d 947, 950 (5th Cir. 1980), and that this action be

**DISMISSED.**   Judgment will be entered by separate Order.

DONE this 19th day of September, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE